IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 10 CR 156 |
| DEBORAH AHMAD BEY, | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

One of the most difficult – or at least hardest to accept – of life's lessons is that some irrationality cannot be countered with rational thought. Deborah Ahmad Bey ("Ahmad Bey") is a poster child for that lesson, for she stubbornly persists in a seeming will toward self-destruction by rejecting suggestions that are in her best interest and involve nothing on the downside.

This Court inherited by random assignment, following the untimely death of its good friend and colleague Honorable William Hibbler, this case in which Ahmad Bey has been indicted on a charge of having knowingly failed to surrender for service of her sentence in another criminal case pursuant to a court order (see 18 U.S.C. § 3146(a)(2)). Because that earlier case provides not only background but also another illustration of a decision by Ahmad Bey that proved to be adverse to her self-interest, a brief description may be useful.

In that earlier criminal case, 04 CR 950, Ahmad Bey was convicted before a jury of substantial fraud in her bankruptcy proceedings. This Court's then colleague Honorable Wayne Andersen imposed only a 3 month custodial sentence, although the Sentencing Guidelines (only advisory in nature, of course) had set a range of 33 to 41 months.

Not content with that result, Ahmad Bey filed a pro se appeal challenging her convictions, which triggered a cross-appeal by the government asserting that the 3 month sentence of imprisonment was unreasonably short. Those cross-appeals resulted in the affirmance of Ahmad

Bey's conviction, coupled with a determination that the custodial sentence was indeed too short, so that the case was remanded for resentencing (see 244 Fed. App'x 57, 2007 WL 2228982 (7th Cir. 2007)).

Ahmad Bey's ensuing pro se petition for certiorari was granted, with the Supreme Court vacating the judgments below and remanding for further consideration in light of Gall v. United States, 552 U.S. 38 (2007) (see Bey v. United States, 553 U.S. 1016 (2008)). That led in turn to our Court of Appeals' issuance of another unpublished order that confirmed (1) that court's non-use before Gall of either of the approaches prohibited by that decision and, particularly, (2) that neither of those approaches had been taken in resolving Ahmad Bey's case. Hence the Court of Appeals held that its earlier order for resentencing remained correct (see 289 Fed. App'x 954, 2008 WL 3891848 (7th Cir. 2008)).

All of this eventuated in a 24 month sentence and, most regrettably, Ahmad Bey's failure to surrender for the service of that sentence. Ahmad Bey ultimately had to serve the sentence, was indicted as earlier stated because of her failure to surrender and – because she was viewed as a flight risk in light of her past performance – has remained in custody after the 24-month sentence was fully served.

When the case first came to this Court's calendar, it was struck by the illogic of Ahmad Bey's stubborn insistence on going to trial. After all, if the trial were to result in an acquittal she would already have served a custodial period that would have come close to what most likely have been her lot if the trial had produced a guilty verdict. Even more importantly, a current dispositive sentence with credit for time served would seem likely to call simply for "time served," resulting in Ahmad Bey's immediate release – and such a sentence would be substantially less than either of the post-trial alternatives.

Under the circumstances this Court was at a loss to understand Ahmad Bey's insistence on a trial, nor did she articulate her reasons on questioning (remember that she has been acting

pro se, just as she did in her first prosecution), and the assistance of standby counsel did not appear to improve the situation. It struck this Court that the core consideration for Ahmad Bey might be a concern that a guilty plea would mean two rather than one felony convictions on her record. On that premise this Court suggested the possibility of entering a plea under the principle established more than four decades ago in North Carolina v. Alford, 400 U.S. 25 (1970), which although not well known enough to form a part of every lawyer's arsenal can provide a means for imposition of a sentence without the precondition of a guilty plea.[1] That possibility had been unknown to both Ahmad Bey and her standby counsel, so at Ahmad Bey's request this Court provided the citations to both Alford and the Tunning case referred to in the last footnote and then set the case for status shortly thereafter to enable the possibility to be considered and evaluated.

Unfortunately Ahmad Bey returned at that ensuing status hearing with no change in her adamant stance, nor was it clear whether she had fully understood the suggested disposition. Moreover, a substantial number of Ahmad Bey's earlier filings in this action gave serious pause on the question of Ahmad Bey's competence to arrive at rational determinations in the area discussed here, or for that matter as to her ability to represent herself at trial and to take advantage of the availability of standby counsel to assist her if the case were indeed to go to trial. Accordingly this Court granted leave for a professional consultation as to competency (see 18 U.S.C. § 4241(b)), and it later approved the Criminal Justice Act appointment of Dr. Paul Rubin for that purpose.

Dr. Rubin's ensuing report contrasted his finding that no mental disorder negated Ahmad Bey's competence in the classical sense with this troubling determination:

> There is no convincing evidence of malingering, nor of a mental illness. Nevertheless, it still raises the question of her competence to be her own counsel. The evidence of her speech and writings strongly supports her incompetence to have acted or continue to act as her own counsel in her defense. And this appears true, in spite of her understanding the roles and functions of the court, its setting

---

[1] See also United States v. Tunning, 69 F.3d 107, 110-14 (6th Cir. 1995), which not only discusses the conceptual underpinning for an Alford plea but also differentiates between such a plea and a plea of nolo contendere.

and participants. I must reiterate, there is no mental disorder to treat either forcibly or freely; nevertheless she is not fit to be her own counsel, even with the support of Mr. Falconer.

Accordingly this Court scheduled a hearing at which Dr. Rubin would be available to answer questions.

Meanwhile this Court has received, within a day or two after having ordered that hearing, copies of three pro se filings by Ahmad Bey, each bearing a June 5, 2012 stamp by the Clerk's Office:

1. One that bears a May 25, 2012 date of preparation is addressed to Assistant United States Attorney Matthew Schneider. It appears to be an odd piece of work, but this Court will not digress into a discussion of its substance or import.

2. Another is a memorandum in support of Ahmad Bey's personal participation in the voir dire process of selecting jurors if the case goes to trial. Again no light is cast on the critical issues spoken of in this memorandum order.

3. Ahmad Bey's third filing, however, repeats her earlier request for a certified copy of what she refers to as the Certified Delegation of Authority Order issued to this District Court and confirmed by Congress. That document, which continues to reflect Ahmad Bey's bizarre notions and hence again triggers the same concerns spoken of here, must be read to be fully appreciated. Hence a copy is attached to this memorandum order.

For example, Ahmad Bey states this near the outset of the document (which is addressed to this Court):

> I hold you harmless, it is the prosecutors who have harmed me for violating the constitution in there [sic] oath of office; and have violated my rights to a speedy trial.

But despite that beginning, Ahmad Bey proceeds with a number of questions addressed to this Court that re-raise concerns about the idee fixe that appears to block out any realistic consideration on her part as to her possible choices and their consequences.

One final matter should perhaps be mentioned in advance of Dr. Rubin's appearance. To this point this Court has essentially equated the comparative consequences of a trial resulting in an acquittal and a trial resulting in a conviction. That of course is not a direct 1-to-1 correlation, for

to the extent that going to trial may negate the sentencing guidelines' two-level reduction for acceptance of responsibility, the risks created by a trial and the possibility of conviction skew that comparison. It is for that reason that this memorandum order began by stating that the possibility made available by an <u>Alford</u> plea appears to have no downside risks whatever.

                                                  _____
                                                  Milton I. Shadur
                                                  Senior United States District Judge

Date: June 11, 2012

United States Court of the Republic

United States District Court Northern District of Illinois
Eastern Division

JUDGE'S COPY

JUN 0 5 2012

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

Date: May 23, 2012

Judge Milton I. Shadur
219 South Dearborn
Chicago, Territory, Illinois Republic
[60604] USA

RE: Criminal Case #10cr0156; Affidavit of Fact/Writ of Discovery Formal Request for a CERTIFIED copy of the "CERTIFIED DELEGATION OF AUTHORITY ORDER".

    I am in receipt of your memorandum and opinion dated 04/02/2012; which is your response to the challenged jurisdiction and 05/14/2012, regarding your response to my formal request for a certified copy of the "Certified Delegation of Authority Order" issued to the United States District Court for the District of Illinois, and confirmed by Congress.

For the Record, On the Record, and Let the Record Show;

    My Honor, I only come to you in Peace and Friendship, because the AUSA have violated my rights as a Moorish American. I hold you harmless, it is the prosecutors who have harmed me for violating the constitution in there oath of office;and have violated my rights to a speedy trial. If there is to be any jurisdiction it shall take place under Article III.

    Article I is Legislative.

    Article III is Constitutional.

    Article IV is Adminstrative.

See Scope of Review 706 (attached)(Judicial review cannot take place in a vacuum).

Sufficient adminstrative record exist for the District court to determine if action of AUSA was arbitary, capricious, or an abuse of discretion in violation of (5) USCS 706(2)(A).

Please see attached Affidavits; Dated 12/07/2011 and 02/14/2012.

"Abuse" The government is not required to submit exculpatory evidence to the grand jury U.S. v. Gardner, 860 F.2d 1391, 1395, (7th Cir. 1988) but it may not present FALSE TESTIMONY, Napue v. Illinois 360 U.S. 264 (1959).

I am demanding that an individualized assessment be done to verify the facts in charging; and I am asking the court to;

Hold unlawful and set aside agency action, findings and conclusion found to be

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making that determination the court shall review the whole record or those parts of the record cited by a party, and due account shall be taken of the rule of prejudicial error.

Questions that need to be answered on the Record, and For the Record.

1.) Are you an Article III judge and not acting under Article I of the Constitution?

2.) According to the Constitution I am entitled to a jury of my peers who will follow the Constitution and be knowledgeable of the Bill of Rights?

3.) Is it not true that a judge cannot establish jurisdiction (practice law from the bench) but the prosecutor; and failure to establish jurisdiction the case cannot be adjudicated and must be dismissed based on your signed oath of office to obey the Constitution.

4.) You are aware that the prosecutor AUSA John Podliska does not have status and was removed and has appeared in this case unlawfully and illegally, and has no standing in this case.

5.) For the record I object to your not following the 1995 Supreme Court decision which Justice Thomas made clear that the FBI nor the Federal Government had police powers based no where in the Constitution which you swore or affirmed to support.

6.) Do you have a surety bond?

I now stand mute.


Respectfully submitted,

*Deborah A. Ahmad : Bey* (signature)

Deborah A. Ahmad : Bey /17425-424
c/o Metropolitan Correctional Center
71 West Van Buren
Chicago, Illinois 60605