UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
        v.                      )       No.  10 CR 156
                                )
DEBORAH AHMAD BEY,              )
                                )
            Defendant.          )

MEMORANDUM

It is truly extraordinary in any federal action, civil or
criminal, for no fewer than four judges to have had to deal with
a case in the course of its existence, in consequence of the
case's original random assignment followed by three random
reassignments.  And "extraordinary" is a gross understatement of
the way in which to characterize the unique situation in which
the third of those judges (in this instance this Court) has
stepped out of the case on the very day that it had been set for
trial--indeed, even as the courtroom deputy had gone to the jury
room to collect the venire.[1]  Because of that uniqueness, it
seems appropriate to recount the circumstances before
memorializing in written form this Court's oral Section 294(b)
decision.

_____

    [1]  This is the first time in more than two decades as a
senior judge in which this Court has exercised its prerogative
under 28 U.S.C. §294(b)("Section 294(b)") to withdraw from a case
assignment after it had presided over the case substantively in
any meaningful way and for any meaningful period of time

This Court first inherited this then two-year-old case when its colleague William Hibbler stepped away from the case only a few days before his untimely death.[1]  Its first step of course was to review the case's background.  In doing so this Court learned that the prelude to the indictment here--an indictment that charges Ahmad Bey's failure to appear to serve a two-year sentence that had been imposed in another criminal case--originally stemmed from her unwise appeal of an overly lenient three-month custodial sentence imposed by another of this Court's colleagues, Honorable Wayne Andersen, after she had been convicted on several counts of bankruptcy fraud in a trial in which she had represented herself.  That sentence was reversed and vacated on the government's cross-appeal, and it was then supplanted by a two year sentence that was ultimately upheld after further appellate proceedings.  It was Ahmad Bey's failure to comply with the court-ordered reporting date to serve that two-year sentence that triggered the current indictment.

Although it certainly appeared that Ahmad Bey's initial appeal in that other case had represented bad judgment on her

---

[1]  Defendant Deborah Ahmad Bey ("Ahmad Bey") had been indicted on March 2, 2010.  When the case was reassigned to this Court on March 19, 2012, Judge Hibbler (who had succeeded the judge originally assigned to the case, Honorable Virginia Kendall, upon her recusal almost a year earlier) had just ruled on a number of pending motions, but had left a number of others unresolved.  Fully 92 docket entries had been made by that date, and there was obviously a good deal that remained to be done before the case would be ready for trial.

part, this Court originally assumed simple bad judgment to be the explanation, rather than perhaps being an example of what has been her persistent and stubborn wrongheadedness that she has since demonstrated throughout this Court's handling of the case. Accordingly, when this Court also saw that after Ahmad Bey was apprehended in the other case (in December 2009, a full year after her designated December 8, 2008 surrender date) she had not only served that two-year sentence but had also been retained in custody in the present case for a meaningful period of time,[2] it suggested at an early status hearing that Ahmad Bey might wish to consider the possibility of a guilty plea because the ensuing sentencing decision under 18 U.S.C. §3553(a)(a decision always reached after considering the advisory Sentencing Guidelines) would seem likely to produce a light sentence--perhaps even just "time served."

    Ahmad Bey rejected that suggestion out of hand, and her reaction suggested to this Court that her motivation might possibly stem from her desire not to have a second criminal conviction on her record. It therefore suggested to her and to

_____

    [2]  That retention in custody had been ordered at the outset of this case (at that time Ahmad Bey had waived a detention hearing--see Dkt. 10). Over a year later, in May 2011, Ahmad Bey moved to be released on bond, and Judge Hibbler denied that motion after a June 10, 2011 hearing (Dkt. 76). That decision was certainly understandable, given the long-term failure to surrender that is the gravamen of the current indictment.

her appointed standby counsel Michael Falconer[3] that if such was the case, she might want to consider the possibility of a plea under <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), which would <u>not</u> entail her pleading guilty to the current offense but would permit a prompt sentencing with the same likely result. Neither Ahmad Bey nor attorney Falconer was familiar with that old (but still viable) precedent, so this Court provided each with the name and citation of the case. Something less than two weeks later Ahmad Bey came back with another flat out (and unexplained) rejection of that obviously constructive suggestion.

Those were the first instances in which this Court demonstrated the approach that it has persistently sought to pursue throughout its tenure in the case--one of honoring and respecting Ahmad Bey's entitlement to represent herself (a constitutional right confirmed by the seminal decision in <u>Farretta v. California</u>, 422 U.S. 806 (1975)), while also providing her with possible input, based in the law applicable to the case, that might be used by her to curb what seems to be a

---

[3] Ahmad Bey had initially been represented in this case by a retained lawyer, who then withdrew from her representation about three months after the date of indictment. Next a member of the federal defender program was appointed to represent Ahmad Bey, and when he in turn later withdrew his appearance, Ahmad Bey elected to represent herself. Attorney Falconer was designated to serve as standby counsel to assist Ahmad Bey in technical aspects of the case where she found that useful. It should be emphasized that attorney Falconer has <u>not</u> served as Ahmad Bey's lawyer, nor has she wished him to do so.

will toward self-destruction.  Those efforts, which Ahmad Bey has
chosen to rebuff consistently for reasons best known to her, have
continued right up to the present.

For example, during the pretrial voir dire conference
earlier this month, this Court suggested that Ahmad Bey ought to
arrange for wearing street clothes rather than an orange jumpsuit
during the trial, to minimize the possibility that any
prospective juror or actual juror might prejudge the current case
on the premise that her being held in pretrial custody was an
indication that she was guilty of the offense charged here.
Ahmad Bey flat-out rejected that suggestion as well, asserting
that she neither needed nor wanted any assistance from anyone.

One other (and even more poignant) example:  When the
parties submitted their proposed exhibits shortly before the
trial date, this Court sustained Ahmad Bey's objection to the
government's Ex. 1, a copy of the indictment in the bankruptcy
fraud case before Judge Andersen.  It did so on the ground that
the nature of that earlier case was really not relevant to the
failure-to-surrender charge in the current case and, moreover,
because the jury's exposure to the charge there would create the
kind of potential for unfair prejudice with which Fed. R. Evid.
403 is concerned.

On the morning of the day set for trial, this Court
suggested a closely-related further step in Ahmad Bey's

entitlement to a fair trial by stating that it would not honor either side's suggestions for voir dire questions about bankruptcy or bankruptcy fraud, with no mention of the nature of Ahmad Bey's earlier conviction to be made in the course of either side's opening statement. In that respect this Court called attention to the Supreme Court's decision in <u>Old Chief v. United States</u>, 519 U.S. 172 (1997) and proposed that an appropriate stipulation could confirm the fact of Ahmad Bey's earlier conviction (which was not in dispute), not only without specifying the offense involved but also by simply referring to the also-undisputed two year custodial sentence that she ultimately received in that case.[4] Although the government agreed to such a measure, even to the extent of redacting the copy of the indictment that would go back to the jury room, together with copies of the Court's jury instructions and the exhibits, for their deliberation. Once again Ahmad Bey swiftly and flatly rejected the suggestion without even considering how it would serve her interests.

---

[4] That latter component would serve as a valuable adjunct, because it would eliminate the possibility that jurors might speculate that Ahmad Bey's earlier undisclosed crime could have been a very serious major offense, again creating the prospect of returning a guilty verdict influenced by what she might have done to cause the earlier conviction (a forbidden propensity consideration). Stipulating to the undisputed two-year sentence in the earlier case could reasonably be expected to dispel any such consideration, and therefore any such danger.

Between the time of the original <u>North Carolina v. Alford</u> suggestion recounted earlier and the two very recent examples just described dating back a few days, this Court has consistently essayed the difficult task of monitoring the proceedings in this case in a manner fully protective of--and in repeated instances going an extra step to protect--Ahmad Bey's right to a fair trial.[5]   It was in that context that on the morning of the scheduled trial, just after Ahmad Bey had spurned the <u>Old-Chief</u>-based suggestion that this Court had made for her benefit, that standby counsel Falconer handed to this Court Ahmad Bey's "Motion to Recusal Trial Judge" that she had filed the preceding evening, a motion asserting that this Court has a "personal bias and prejudice against the defendant, Deborah Ahmad Bey, and therefore, could not preside at the trial with the required degree of detached impartiality."

Not to put too fine a point on it, that motion has again presented Ahmad Bey's warped lack of understanding of the matters that are and are not relevant to the present case.  Ironically,

---

[5]   During the week before trial the government assembled for consideration by Ahmad Bey this Court's numerous written opinions and orders:  Dkt. 102 issued April 2, 2012, Dkt. 108 issued May 14, 2012, Dkt. 138 issued August 13, 2012, Dkt. 148 issued September 5, 2012, Dkt. 152 issued September 24, 2012, Dkt. 161 issued October 17, 2012 and Dkt. 196 issued May 23, 2013.  Those written treatments of various aspects of the case demonstrate graphically why Ahmad Bey has been by all odds the most difficult criminal defendant that this Court has encountered during more than three decades on the bench.

what that motion really reflects is Ahmad Bey's <u>self</u>-bias that
has fueled her unremitting refusal to accept the rules of law
that apply to and govern this case.  This latest distorted
submission by Ahmad Bey has unwittingly but unquestionably
reconfirmed the wisdom embodied in the often-quoted aphorism from
Alexander Pope's <u>Essay on Criticism</u> pt. II, line 359:

All looks yellow to the jaundic'd eye.

For example, Ahmad Bey's numerous proposed exhibits focus to
a large extent (if not indeed wholly) on aspects of the
proceedings that led up to the imposition of the two year
sentence that forms the gravamen of the current charge that she
failed to appear to serve her court-ordered sentence on the
court-ordered date set for that surrender.  That being so, the
entire prelude to the imposition of the sentence and the setting
of its surrender date constitutes a digression that does not pass
the relevance test.

Even worse, in substantial part the motion is predicated on
outright lies--for example, with its statement that during the
June 13 voir dire conference this Court "reiterated his
resentment in defendant representing herself and not accepting
his <u>Alford</u> Plea and then directed the government to imply the
threat of ten years' incarceration."  To demonstrate the contrast
between Ahmad Bey's skewed version and what really took place

during the June 13 voir dire conference, two excerpts from the transcript of that conference are attached.

First, as to the notion of this Court's purported "resentment" at Ahmad Bey's exercise of her constitutional right of self representation, the Ex. 1 excerpt was the product of this Court's having observed from the case docket that Judge Kendall had confirmed that right, as this Court had repeatedly reconfirmed--indeed emphasized--during its own handling of the case. Because this Court had not of course been involved in the case at the time and did not have immediate access to any transcript before Judge Kendall, it wished to reconfirm Ahmad Bey's desire for self-representation in the appropriate way--so it faithfully followed the detailed procedure presented in Section 1.02 of the Federal Judicial Center's <u>Benchbook for U.S. District Court Judges</u> (6th ed. Mar. 2013). And as for any purported "resentment" as to Ahmad Bey's not accepting an <u>Alford</u> plea, attached Ex. 2 puts the lie to that mischaracterization.

There is no need to proceed with further chapter-and-verse examples of the personal abuse contained in the ill-conceived motion, which this Court quickly denied as groundless. It is of course understandable, and certainly permissible, for a pro se litigant unlettered in the law to voice respectful disagreement with a judge's legal rulings, even though such disagreement stems from that litigant's mistaken beliefs as to the operative rules

of law.  But it is really intolerable when those mistaken beliefs manifest themselves in unwarranted personal abuse, as in Ahmad Bey's ill-considered and ill-conceived motion.

It was at that point that this Court announced its decision that essentially found that enough was enough (or perhaps more accurately that enough was too much), and accordingly announced its exercise of its prerogative under Section 294(b) to withdraw from the case.  That determination is confirmed in written form here and has already been implemented by this District Court's Executive Committee.

_____
Milton I. Shadur
Senior United States District Judge

Date:  June 21, 2013

1        THE COURT:  My fault.  I saw a reference on the

2   record to Ms. Bey having been present and Judge Kendall

3   having made the necessary inquiries that established her

4   entitlement to go forward, as is her constitutional right, to

5   represent herself rather than through counsel.

6        I don't have a transcript of that, and so at the

7   risk of repetition I just want to go through the questions

8   that are involved in that and just make sure just as a matter

9   of record that it is appropriate.  So let me go down the line

10  and to the extent that this is, Ms. Ahmad Bey, deja vu all

11  over again, I hope that you will be patient with that.  It is

12  simply that I want to make sure about something that we have

13  always been treating, all of us, as established.

14        So the first thing that I want to do is to let you

15  know, as I have made plain a number of times, that you have

16  the constitutional right to go in either one of two

17  directions.  One, to be represented by a lawyer at every

18  stage of the proceedings and two, alternatively to represent

19  yourself, which the United States Supreme Court has

20  confirmed.

21        On the question of counsel, the first alternative,

22  if you are not able to afford a lawyer, the Court of course

23  has the right and the obligation to appoint one without cost.

24  You are familiar with the nature of the offense which is

25  being charged with failure to report for service of the

Ex. 1-1

1 | sentence that had previously been imposed on you.

2 | So let me just first ask Ms. Bey to reconfirm, I

3 | think, if you understand your right to have an attorney. So

4 | let's start out with that. Do you?

5 | MS. AHMAD BEY: Yes.

6 | THE COURT: And the next question, which I am quite

7 | sure I know the answer to but I think it is useful again to

8 | repeat, do you wish to obtain counsel?

9 | MS. AHMAD BEY: No.

10 | THE COURT: And that includes not only retaining

11 | counsel, but do you wish to have the Court appoint counsel

12 | for you?

13 | MS. AHMAD BEY: No.

14 | THE COURT: Now, Miss Ahmad Bey, have you ever

15 | studied law?

16 | MS. AHMAD BEY: No.

17 | THE COURT: Have you ever represented yourself in

18 | any other criminal case?

19 | MS. AHMAD BEY: In the first proceeding I

20 | represented myself --

21 | THE COURT: Okay.

22 | MS. AHMAD BEY: -- under Judge Andersen.

23 | THE COURT: Yes. So you understand that you are

24 | charged with the crime that I have described in summary form.

25 | I didn't mean to do it in detail. But it says --

Ex. 1-2

1    MS. AHMAD BEY: Right, but I don't have a copy of

2  the indictment either. Not that I didn't have one.

3    THE COURT: Really?

4    MS. AHMAD BEY: I just couldn't find it when I was

5  going through all of my stuff.

6    THE COURT: Well, I just had one photocopied, and I

7  will make sure that you get one photocopied.

8    MS. AHMAD BEY: Thank you.

9    THE COURT: Now you understand if you are found

10  guilty of the the crime, the Court will have to impose a

11  special assessment of $100.00 and it could sentence you to

12  the period of time that under the law is provided for such

13  failure. And Mr. Podliska, do you want to just inform the

14  defendant as to the consequence, both in terms of the

15  potential maximum sentence, the potential maximum fine and

16  also the potential for supervised release.

17    MR. PODLISKA: Yes, your Honor, if I may have just

18  one moment.

19    THE COURT: Sure.

20    MS. AHMAD BEY: Judge, can we waive that?

21    THE COURT: What?

22    MS. AHMAD BEY: Can we waive that?

23    THE COURT: No, I don't think so.

24    MS. AHMAD BEY: Okay.

25    THE COURT: I want to make sure that this --

Ex, 1-3

1          MS. AHMAD BEY: Okay.

2          THE COURT: This may be belt and suspenders, but

3 remember I was not there, and the idea of going back to make

4 sure that it is done --

5          MS. AHMAD BEY: Yes, sir.

6          THE COURT: -- doesn't really substitute for

7 spending a few minutes, and important minutes, on that

8 subject.

9          MS. AHMAD BEY: All right.

10         THE COURT: Yes, Mr. Podliska.

11         MR. PODLISKA: Yes, your Honor. The maximum

12 punishment, your Honor, given the underlying conviction here,

13 would be a term of imprisonment of five years and fine of up

14 to a quarter of a million dollars.

15         THE COURT: And provision for possible supervised

16 release after any sentence of confinement?

17         MR. PODLISKA: Yes. I don't have that before me,

18 your Honor. I do believe it would be a period of

19 approximately three years of supervised release that would

20 follow any period of imprisonment. There is also a statutory

21 enhancement that may apply to this offense, your Honor, under

22 Section 3147 which makes it a -- there is an additional

23 period of imprisonment that can be imposed for a person

24 convicted of an offense while on release. And that sentence

25 could be up to ten years, your Honor, and doesn't provide for

Ex. 1-4

1   a fine.  It does provide for a sentence of imprisonment, in

2   addition to any sentence of imprisonment under 3146.

3          THE COURT:  That could be consecutive to the five

4   years?

5          MR. PODLISKA:  Yes.  In fact, it requires that that

6   term of imprisonment is imposed under Section 3147, that that

7   term of imprisonment must be consecutive to any term of

8   imprisonment imposed for the violation of 3146.

9          THE COURT:  Okay.  Do you understand that that is

10  what Congress has set as the ceiling that could apply if you

11  are convicted of this offense?

12         MS. AHMAD BEY:  Do you understand that that is what

13  I am fighting, the statute?

14         THE COURT:  I know that.

15         MS. AHMAD BEY:  Okay.  All right.

16         THE COURT:  But I am talking about the statute that

17  is charged in the indictment.

18         MS. AHMAD BEY:  I believe that is incorrect, but --

19         THE COURT:  Now you also understand that there are

20  advisory Sentencing Guidelines that could have an effect on

21  your sentence if you are found guilty?

22         MS. AHMAD BEY:  Yes.

23         THE COURT:  And further do you understand that if

24  you represent yourself, you are on your own?  I have, as you

25  know, put Mr. Falconer in the position in which he is standby

Ex. 1-5

1   counsel to the extent that you wish to make use of his

2   services.  But when I say you are on your own, being on your

3   own also includes the extent to which you decide whether you

4   want to make use of his services or not to assist you in

5   connection with, for example, some of the technical aspects

6   or other aspects of a trial.

7          Do you recognize that?

8          MR. FALCONER:  Judge, can I -- I don't see the

9   parameters as me essentially being second chair in the case.

10  It is not like I am a secondary lawyer and she is the primary

11  lawyer.  And I am --

12         MS. AHMAD BEY:  He doesn't do anything.

13         MR. FALCONER:  I think the parameters should be I

14  am standby in case she gets in trouble at trial and she needs

15  to ask a question.

16         THE COURT:  That is what I said.  I will put it a

17  different way.  The choice, to the extent in which she wants

18  to call on you, for any assistance and that you are here.

19  That is what "standby" means.  You are not -- you have no

20  obligation, for example, to be forthcoming if you think that

21  Ms. Bey is not handling her defense properly.  That is not

22  your function.

23         MR. FALCONER:  Right.  But I was looking at it from

24  the other end to say that she has the choice of the extent --

25  she can't make that extent as wide as stepping in as counsel,

Ex. 1-6

1  for example.

2  THE COURT: She cannot make you her lawyer at that

3  point.

4  MR. FALCONER: Yes.

5  THE COURT: When I said she is on her own --

6  MR. FALCONER: Right.

7  THE COURT: -- that is the concept that I had

8  tried to convey.

9  MR. FALCONER: Okay.

10  THE COURT: So there is no misunderstanding about

11  that, right?

12  MS. AHMAD BEY: Right. In the previous trial I did

13  have people who were sitting at the table with me that were

14  assisting me with the technicalities, of like the relevancy

15  of objections and different things like that. So I had

16  people at the table with me. I don't know if I will be able

17  to do that this time, but I am going to be requesting that

18  the same people who were at the trial before be able to

19  assist me.

20  THE COURT: Who were those?

21  MR. FALCONER: Judge Andersen let somebody

22  described as her spiritual advisor sit with her at the table.

23  THE COURT: Well, I don't have spiritual advisors

24  in my court because I think there is a separation between

25  church and state. And that one certainly applies in my

Ex. 1-7

1    courtroom, spiritual or otherwise.

2            MR. PODLISKA:  That was over the Government's

3    objection, your Honor.  And we would be objecting to that in

4    this case.

5            THE COURT:  Yes, I am not granting that.  You chose

6    to represent yourself, and you represent yourself.  To the

7    extent you may need assistance in connection with mechanical

8    things, things that are of a technical nature, Mr. Falconer

9    is available.  But you are also not -- both you are not

10   obligated to request his assistance, and second, he is not

11   obligated to provide assistance beyond what I have talked

12   about.  A decision to represent yourself is a decision to

13   represent yourself.  And the Court is not -- nor is the Court

14   your lawyer.

15           Now I recognize that it may pose difficulties, but

16   that is in the nature of the person's constitutional right of

17   self-representation.  I can't tell you, for example, or

18   advise you how you ought to try your case, nor is

19   Mr. Falconer in a position in which he provides that.  You

20   are on your own.  Do you understand that?

21           MS. AHMAD BEY:  Yes.

22           THE COURT:  Okay.

23           Are you familiar with the Federal Rules of

24   Evidence?

25           MS. AHMAD BEY:  Familiar with what?

Ex.1-8

50

1    THE COURT:  The Federal Rules of Evidence.

2    MS. AHMAD BEY:  Is that that little book you gave

3  me?

4    MR. FALCONER:  Yeah, they are in there.

5    MS. AHMAD BEY:  Yeah.

6    THE COURT:  You are.  Okay.  You understand that

7  the rules of evidence determine what evidence may or may not

8  be placed before the jury that may be introduced at trial,

9  and that when you represent yourself you, just as is true of

10  every lawyer in a lawyer-representation case, have to abide

11  by these technical rules and that they are not going to be

12  bent or relaxed for your benefit.

13    Do you under understand that?

14    MS. AHMAD BEY:  If that is your choice, your Honor.

15    THE COURT:  I beg your pardon?

16    MS. AHMAD BEY:  If that is your choice.

17    THE COURT:  If that is my choice?

18    MS. AHMAD BEY:  Yes.

19    THE COURT:  No, it is not my choice.  It is your

20  choice.

21    MS. AHMAD BEY:  Whatever the rule entitles, I am --

22  I agree with it.

23    THE COURT:  Again let's not -- nobody is inflicting

24  some result on you.  If you decide that you are going to

25  represent yourself --

Ex. 1-9

1    MS. AHMAD BEY:  I am going to represent myself.

2    THE COURT:  -- it carries with it the obligation to

3    do everything that is involved that a lawyer would be doing

4    if the lawyer were representing you.  And that includes

5    living by the rules of evidence and living by the other rules

6    that apply to any court proceeding.

7    Do you understand that?

8    MS. AHMAD BEY:  Yes.

9    THE COURT:  Are you familiar with the Federal Rules

10   of Criminal Procedure?

11   MS. AHMAD BEY:  Yes.

12   THE COURT:  And you understand that those rules

13   also govern the way that a criminal trial is conducted in the

14   Federal Court, and once again you are bound by those rules

15   and they cannot be bent or distorted or relaxed for your own

16   benefit?

17   MS. AHMAD BEY:  Yes.

18   THE COURT:  Now let me repeat something that I had

19   said earlier in -- a couple of times in different contexts,

20   and that is in my opinion a trained lawyer would defend you

21   far better than you can defend yourself.  I think that it is

22   not wise for any defendant who is not schooled in the law to

23   seek to represent himself or herself.  You have said that you

24   are familiar with the law.  But, you know, I can't give you

25   the same kind of quiz that is given, for example, to young

Ex. 1-10

1  lawyers when they get out of law school and they have to pass
2  a bar exam. I can't do that. So I cannot verify the extent
3  of your familiarity with court proceedings. You have of
4  course had prior court experience, and that may assist you,
5  but I am not fully convinced at all that you are familiar
6  with the rules of evidence. And so I have urged you in the
7  past, and I would think that I would be remiss if I did not
8  once again urge you not to try to represent yourself.

9          You understand that?

10         MS. AHMAD BEY: Yes, sir.

11         THE COURT: Now in light of the consequences that
12  may apply if you are found guilty and in light of all the
13  difficulties of representing yourself, is it still your
14  desire to represent yourself?

15         MS. AHMAD BEY: Yes.

16         THE COURT: And to give up your constitutional
17  right to be represented by a lawyer?

18         MS. AHMAD BEY: This is still my desire to
19  represent myself.

20         THE COURT: And is that a totally voluntary
21  decision?

22         MS. AHMAD BEY: Yes, it is.

23         THE COURT: Okay. I then find that the defendant
24  has both knowingly and voluntarily waived the right to
25  counsel and I will therefore permit Miss Ahmad Bey to

Ex 1-11

1     represent herself.

2         I have, as you know, designated Mr. Falconer to act

3     as the term "standby counsel," which is different from being,

4     as he has put it more eloquently, second chair in a situation

5     in which you are the primary chair. He is there solely for

6     purposes of assisting in the kind of thing that we have

7     talked about. And accordingly I reconfirm his designation

8     for that purpose.

9         So now with that out of the way, let me come down

10     and we will all sit around the table and talk about the

11     matter, unless there is something else.

12         MR. PODLISKA: If I could put just a couple of

13     things on the record as well, your Honor.

14         THE COURT: Yes.

15         MR. PODLISKA: We did provide --

16         THE COURT: Oh, I plan, by the way --

17         MR. PODLISKA: Oh.

18         THE COURT: I plan to have Rosemary with us during

19     this period.

20         MR. PODLISKA: Oh, well, that is fine, your Honor.

21         THE COURT: Very unusual in connection with any

22     voir dire conference, but I think under the circumstances it

23     would be a mistake not to.

24         MR. PODLISKA: That is fine.

25         MR. FALCONER: Judge, I thought we would be farther

Ex. 1-12

1    MR. PODLISKA:  Miss Ahmad Bey insists on living in

2    her own world.  She is now talking about how she was released

3    after finishing serving the three-month sentence.  The only

4    sentence that she will ever talk about is the three-month

5    sense that she received.

6        THE COURT:  Miss Ahmad Bey, you made the bad

7    judgment, frankly, to appeal from a three-month sentence.

8        MS. AHMAD BEY:  Your Honor, that is not relevant.

9        THE COURT:  Just let me finish if I may.  Now it is

10   what made me -- I will tell you from day one, when I

11   inherited this case because of concern about your

12   misperception, that is the reason that I raised the issue

13   about the potential use of North Carolina against Alford.

14   Because I understood that you did not wish to be tarred with

15   two convictions rather than one, and I tried to explain that

16   there was a procedure that did not require that and that as I

17   thought of it then, although I hadn't made any calculation,

18   it was very likely that if you were to follow that procedure

19   you would be dealing with a sentence of time served on this

20   offense, and it certainly would have been lighter than what

21   has happened since then.

22       But that doesn't make it -- that doesn't make the

23   three-month sentence and the release from that relevant at

24   all.  The -- because all of that got overtaken again by your

25   own efforts, by the Government's cross-appeal, by Court

Ex. 2